# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JIMMIE RANDOLPH,

               Petitioner,

v.                                        Case No. 06-CV-11201

KENNETH ROMANOWSKI,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DECLINING TO CERTIFY AN *IN FORMA PAUPERIS* APPEAL

Petitioner Jimmie Randolph, a state prisoner currently confined at the West Shoreline Correctional Facility in Muskegon Heights, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of three counts of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(a), following a jury trial in the Oakland County Circuit Court in 2003. He was sentenced as a third habitual offender to concurrent terms of 12 to 25 years imprisonment on those convictions.

In his pleadings, Petitioner raises claims concerning a witness's assertion of her Fifth Amendment privilege, the admission of other acts evidence, and his habitual offender sentence. For the reasons set forth below, the court denies the petition for a writ of habeas corpus. The court also declines to issue a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

# I. BACKGROUND

Petitioner's convictions arise from his sexual relationship with a 14-year-old girl, Felicia Williams, who had attended a middle school where Petitioner had been the principal and who was attending an Upward Bound college preparatory program in which Petitioner had been involved. Ms. Williams testified that Petitioner bought her several items, including outfits, a coat, and shoes, in exchange for sexual favors. She stated that they had oral and/or vaginal sex on three occasions at motels in Oakland County, Michigan in 2001 and 2002. Ms. Williams eventually told Yolanda Sowell, a teacher and her cousin through marriage, about the relationship. Acting on Mrs. Sowell's advice, Ms. Williams told Petitioner that she wanted to end their relationship. Petitioner then informed her that he and Mrs. Sowell had been having an affair and asked her what it would cost him to resolve the situation. Ms. Williams admitted that she and Mrs. Sowell unsuccessfully attempted to extort $10,000 from Petitioner before she reported the matter to the police.

Aerica Bercant, another teenage girl who was a former student at Petitioner's middle school and an Upward Bound program participant, testified that Petitioner unexpectedly grabbed her and kissed her in July, 2001. She reported the incident to police a few days later. Mrs. Sowell did not testify at trial because she asserted her Fifth Amendment privilege upon the advice of counsel.

Petitioner testified in his own defense at trial. He admitted buying Ms. Williams a coat and shoes, giving her a small amount of money, and taking her places on occasion, but denied having a sexual relationship with her. He also discussed his affair with Mrs. Sowell. Petitioner claimed that Ms. Williams only contacted the police after he refused to give in to the extortion attempt.

2

For purposes of this opinion, the court accepts the more detailed factual allegations contained in Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus insofar as they are consistent with the record, as Respondent has not disputed them. *See Dickens v. Jones*, 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the same claims contained in his habeas petition. The Michigan Court of Appeals affirmed his convictions and sentence. *People v. Randolph*, No. 248957, 2004 WL 2533549 (Mich. Ct. App. Nov. 9, 2004). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *See People v. Randolph*, 696 N.W.2d 720 (2005).

Petitioner thereafter submitted his federal habeas petition, asserting the following claims as grounds for relief:

I. The Michigan Court of Appeals erred when it affirmed the decision of the trial court in allowing witness Sowell to assert her Fifth Amendment right to not testify.

 a. Petitioner was deprived of his fundamental right to due process of law where the prosecutor deliberately enacted error into the proceedings by making an opening statement promising the jury testimony from a witness the prosecutor knew would invoke the Fifth Amendment thereby hampering Petitioner's primary defense to the charges.

 b. The trial court erred reversibly by failing to conduct a proper evidentiary hearing into witness Sowell's assertion of the Fifth Amendment.

 c. Petitioner's counsel's erroneous concession that there was no legal remedy available to Petitioner in light of Sowell's assertion of the Fifth Amendment constituted a mistake so serious as to amount to ineffective assistance of counsel.

II.     The Michigan Court of Appeals erred when it determined that defendant was not denied due process of law under the Fifth and Fourteenth Amendments of the United States Constitution where the court improperly allowed the admission of 404(B) evidence.

III.    The Michigan Court of Appeals erred when it determined that defendant's sentence was not illegal, where the trial court improperly sentenced defendant as a habitual offender, thereby resulting in a denial of due process of law.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.  Petitioner has filed a reply to that answer.

## II.  DISCUSSION

### A.  Standard

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"
*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,
529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he
'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to
'grant the writ if the state court identifies the correct governing legal principle from [the
Supreme] Court but unreasonably applies that principle to the facts' of petitioner's
case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413);
*see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state
court's application of [Supreme Court] precedent 'unreasonable,' the state court's
decision must have been more than incorrect or erroneous.  The state court's
application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21
(citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of
whether the state court's decision comports with clearly established federal law as
determined by the Supreme Court at the time the state court renders its decision.  *See*
*Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).
Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does
not even require *awareness* of [Supreme Court] cases, so long as neither the
reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*,
537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of
"clearly established law" are to be determined solely by the holdings of the Supreme
Court, the decisions of lower federal courts are useful in assessing the reasonableness
of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667,
671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## B. Fifth Amendment Privilege Claims

Petitioner asserts that he is entitled to habeas relief because his due process rights were violated by Yolanda Sowell's refusal to testify at trial based on her assertion of her Fifth Amendment privilege against self-incrimination. Specifically, Petitioner claims that the prosecutor engaged in misconduct by referring to the witness's potential testimony during opening statements, that the trial court erred in failing to conduct a proper hearing into Ms. Sowell's assertion of the privilege and that defense counsel was ineffective for conceding that Petitioner lacked a remedy to counter Ms. Sowell's assertion of the privilege. Respondent contends that these claims lack merit.

The prosecutor's opening remarks concerning Ms. Sowell's testimony were as follows:

> You're going to hear from Ms. Sowell....
>
> Then there came a point in time when she [Felicia Williams] spoke to Mrs. Sowell at Pontiac Northern, and I believe you're going to hear from both, again, Felicia Williams and Mrs. Sowell, that she confided to Mrs. Sowell, wrote her a letter explaining the situation of what she – what was going on, Mrs. Sowell told her to terminate that relationship right away, that Felicia then saw the Defendant, I believe that evening, told him that she was going to terminate it, and then the Defendant told her that, with regard to Mrs. Sowell, he had sex with her before so, you know, it's okay, it was all right. Felicia told Mrs. Sowell this, and then they got on the phone with [the Defendant]. And you're going to hear from Felicia that, first of all, the Defendant told her, he says, "Well, why'd you tell anybody? You weren't supposed to tell anybody," and then asked the question, "How much would it cost to end this?" Basically: How much would it cost to keep quiet? And then Felicia, again, without any common sense at all, talked to Mrs. Sowell and told her what had been said to her by the

> Defendant, and she indicated, "Tell him ten thousand dollars," so Felicia
> did, she told him ten thousand dollars, and he said he couldn't make that
> kind of money. And no money ever transferred hands, none of that ever
> came out.

(3/3/03 Trial Tr. at 150-51.)

On the second day of trial, after Felicia Williams's testimony and outside the jury's presence, the prosecutor informed the court that he had been advised by Mrs. Sowell's attorney that she planned to assert her Fifth Amendment privilege if called to testify at trial. Mrs. Sowell's attorney confirmed this fact and said that Mrs. Sowell was concerned about incriminating herself as to the extortion incident. Upon questioning by the court, Mrs. Sowell asserted her Fifth Amendment privilege. A discussion was held off the record. The trial judge concluded that Mrs. Sowell was entitled to claim the privilege based upon the previous day's testimony. (*See* 3/4/03 Trial Tr. at 3-6.)

Defense counsel requested a dismissal, arguing that Mrs. Sowell's failure to testify deprived Petitioner of his defense. The prosecutor responded that he "had a real good idea that she was going to attempt to take the Fifth," but stated that he did not believe that Mrs. Sowell had a right to do so "based upon her statement to police." (*Id.* at 10.) The prosecutor subsequently informed the court that Mrs. Sowell would not be granted immunity. Mrs. Sowell did not testify at trial.

At the close of trial, the trial court instructed the jurors that they should only decide the case based upon the properly-admitted evidence and that the attorneys' arguments and statements were not evidence. (*See* 3/7/03 Trial Tr. at 149-50.) The trial court further instructed the jury:

> There has been a reference made to Mrs. Sowell. Do not speculate one
> way or the other as to what, if anything, this individual might have testified
> to, because that should not be held against either the Prosecution or the

Defense that you have not heard from this witness.  Do not speculate as
to what she might have testified to.

(*Id.* at 155-56.)  The court also instructed the jury on the elements of the charged

offenses and other matters.

### 1.  Prosecutorial Misconduct

Petitioner first claims that the prosecutor engaged in misconduct by referring to

Mrs. Sowell's proposed testimony during opening statements despite believing that she

would assert her Fifth Amendment privilege and refuse to testify at trial.  The United

States Supreme Court has stated that prosecutors must "refrain from improper

methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295

U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas

petitioner must demonstrate that the prosecutor's remarks "so infected the trial with

unfairness as to make the resulting conviction a denial of due process."  *Donnelly v.
DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part

test for determining whether prosecutorial misconduct violates a defendant's due

process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing

cases).  First, the court must determine whether the challenged statements were

indeed improper.  *Id.* at 452.  Upon a finding of impropriety, the court must decide

whether the statements were flagrant.  *Id.*  Flagrancy is determined by an examination

of four factors: (1) whether the statements tended to mislead the jury or prejudice the

accused; (2) whether the statements were isolated or among a series of improper

statements; (3) whether the statements were deliberately or accidentally before the

jury; and (4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle*

*v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

The Michigan Court of Appeals denied relief on Petitioner's prosecutorial misconduct claim, stating:

> Defendant bases his claim of prosecutorial misconduct on the prosecutor's failure to introduce into evidence Sowell's testimony after the prosecutor referred to Sowell during his opening statement. However, it is well-settled that a prosecutor's reference during opening statements to evidence that is not subsequently admitted at trial does not warrant reversal if the reference was made in good faith, and no prejudice resulted. *People v. Wolverton*, 227 Mich App 72, 76-77; 574 NW2d 703 (1997). We conclude the prosecutor's remarks here were made in good faith because when his opening statement was made, he did not yet know whether Sowell would succeed in invoking her Fifth Amendment privilege. Moreover, facts were adduced at trial that supported all the statements the prosecutor made, notwithstanding that Sowell did not testify. Therefore, we find no plain error affecting substantial rights. *See People v. Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

*Randolph*, 2004 WL 2533548 at *3.

Having reviewed the matter, the Court finds that the Michigan Court of Appeals's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Although it is possible for a prosecutor's comments during opening statements to be so prejudicial as to support a finding of constitutional error, *see Frazier v. Cupp*, 394 U.S. 731, 736 (1969), there is no error if the prosecutor gives an "objective summary of evidence which the prosecutor reasonably expects to produce," even if events at trial prevent the prosecutor from actually presenting that evidence. *Id.* In *Frazier v. Cupp*, the United States Supreme Court found that the prosecutor's

opening statement reference to witness testimony, which was not subsequently

presented at trial, did not constitute prosecutorial misconduct or a deprivation of the

right of confrontation warranting habeas relief. *Id.* at 736-37. The circumstances

considered by the Court included: (1) the extent of the prosecution's reference to the

witness's potential testimony; (2) the emphasis placed on the witness; (3) the strength

of the other evidence presented and the importance of the testimony to the

prosecution's case; and (4) the effectiveness of limiting instructions to the jury. *Id.* at

734-37.

The record in this case indicates the prosecution gave an objective summary of

the evidence that he reasonably expected to produce at trial. Although the prosecutor

acknowledged that he believed Mrs. Sowell would attempt to assert her Fifth

Amendment privilege if called to testify, he also expressed his belief that she was not

entitled to do so based upon her prior statements to police. This is not a case in which

the prosecutor referred to patently inadmissible evidence in an effort to taint the jury.

*See Thomas v. Garraghty*, 18 F. App'x 301, 311 (6th Cir. 2001) (prosecutor did not

engage in deliberate misconduct by calling witness who he knew would claim a Fifth

Amendment privilege where he believed that the witness did not have a valid privilege

and he believed that he could put witness on stand to preserve his own credibility);

*United States v. Akin*, 562 F.2d 459, 466 (7th Cir. 1977) (no evidence of misconduct

where prosecutor expected to call witness at time of opening statement but was

precluded from doing so by trial court's subsequent ruling). Petitioner has failed to

show that the prosecutor's opening statement was improper.

Moreover, even if the prosecutor erred in some way, Petitioner has not

established that he was prejudiced by the prosecutor's opening statement. First,

although Mrs. Sowell did not testify at trial, the evidence the prosecutor said he would present was, in fact, presented through other witness testimony. For example, Ms. Williams testified about her letter and discussions with Mrs. Sowell, the affair between Mrs. Sowell and Petitioner, and the extortion incident. Other witnesses, including Petitioner, also testified about such matters. Consequently, any prejudice to Petitioner arising from the prosecutor's reference to Mrs. Sowell's testimony was minimal. *See United States v. Smith*, 203 F.3d 884, 889 (5th Cir. 2000) (opening statement referring to witness testimony which was not delivered was not prejudicial where the promised evidence was presented through alternate sources); *United States v. Hawkins*, 91 F.3d 146, 1996 WL 407261, *4 (7th Cir. 1996) (citing cases).

Second, the prosecutor's reference to Mrs. Sowell's possible testimony was brief and not particularly inculpatory as to the sexual assault charges. To be sure, the failure to produce Mrs. Sowell, as indicated in opening statements, was potentially more prejudicial to the prosecution than the defense to the extent that Mrs. Sowell would have corroborated Ms. Williams's version of events.

Third, the prosecution presented significant evidence of Petitioner's guilt, including Felicia Williams's testimony, the testimony of other teachers to whom she reported the matter, the motel receipts produced by the police and the evidence of Petitioner's purchases for Ms. Williams.

Lastly, and most significantly, the jury was specifically instructed that the prosecutor's opening statement was not evidence and that the jury should not speculate about Mrs. Sowell's failure to appear at trial. *See Frazier*, 394 U.S. at 736 ("Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been

given."); *Meade v. LaVigne*, 265 F. Supp. 2d 849, 860 (E.D. Mich. 2003) (failure to produce a prosecution witness as promised was not error where trial court gave cautionary instruction and prosecution presented overwhelming evidence of guilt); *see also United States v. Ashman*, 979 F.2d 469, 491 (7th Cir. 1992). Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Given these circumstances, Petitioner has failed to demonstrate that the prosecutor engaged in misconduct and/or that he was prejudiced by the prosecutor's reference to Mrs. Sowell's possible testimony during opening statements. Habeas relief is not warranted on this claim.

### 2. Trial Court Inquiry

Petitioner also asserts that the trial court failed to conduct a sufficient inquiry into Mrs. Sowell's assertion of her Fifth Amendment privilege. As a general matter, the Compulsory Process Clause "grants a criminal defendant the right to call witnesses that are 'material and favorable to his defense.'" *Wong v. Money*, 142 F.3d 313, 324 (6th Cir. 1998) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). The right to compulsory process, however, is not absolute; and testimony is subject to general evidentiary rules such as those governing relevance and privilege. *See Washington v. Texas*, 388 U.S. 14, 23 n. 21 (1967); *United States v. Walker*, 410 F.3d 754, 758 (5th Cir. 2005); *Smith v. Cromer*, 159 F.3d 875, 882 (4th Cir. 1998).

A defendant's right of confrontation and compulsory process under the Sixth Amendment is not violated when a witness invokes his or her right against self-incrimination under the Fifth Amendment. *See Kastigar v. United States*, 406 U.S. 441, 444 (1972). A defendant's Sixth Amendment right to compulsory process does not

include the right to compel a witness to waive his or her Fifth Amendment privilege. *See, e.g., United States v. Blaylock*, 421 F.3d 758, 770 (8th Cir. 2005). Thus, the Sixth Amendment's right of compulsory process must generally give way to a witness's Fifth Amendment privilege against self-incrimination. *See United States v. Pugh*, 1998 WL 165143, *3 (6th Cir. March 31, 1998); *accord Blaylock*, 421 F.3d at 770; *Brown v. Cain*, 104 F.3d 744, 749 (5th Cir. 1997).

The privilege applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). A witness's fear of prosecution must be real and reasonable; it cannot be merely fanciful or speculative. *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001); *Marchetti v. United States*, 390 U.S. 39, 53 (1968). The merits of a claim of privilege are to be determined by the trial court under an objective standard, not by the witness's subjective beliefs. *Hoffman*, 341 U.S. at 486. A trial judge is accorded broad discretion in determining whether the privilege is properly invoked, and a reviewing court must accord substantial deference to the trial judge's determination. *See United States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998).

The Michigan Court of Appeals denied relief on this claim, stating:

We are also satisfied that the trial court properly handled the matter. Defendant argues that the trial court erred by failing to hold a more comprehensive evidentiary hearing regarding the validity of Sowell's invocation of her Fifth Amendment privilege. In support of this assertion of error, defendant relies on *People v. Poma*, 96 Mich App 726; 294 NW2d 221 (1980). However, *Poma* does not provide that an evidentiary hearing should be held to determine the validity of a witness's proposed assertion of the Fifth Amendment privilege. Rather, such a hearing is to be held to determine if the witness "will either properly or improperly claim the protection against self-incrimination...." *Id.* at 733 (emphasis added). Recognizing the prejudice that inheres when a witness asserts the

13

privilege from the witness stand, the judge "must not allow [the] ... witness to be called to the stand." *Id.* In the case at bar, there appears to be no question that Sowell would have asserted her Fifth Amendment privilege in front of the jury if she were called to the stand. Thus, the requirements of *Poma* were satisfied.

Moreover, as he acknowledged at trial, defendant could not compel the prosecutor to grant Sowell immunity in exchange for her testimony. *See People v. Catanzarite*, 211 Mich App 573, 580; 536 NW2d 570 (1995).

*Randolph*, 2004 WL 2533548 at *3.

Having reviewed the matter, the Court finds that the Michigan Court of Appeals's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has failed to show that the trial court's exercise of its broad discretion was unreasonable. The trial court ascertained that Mrs. Sowell had consulted with her own counsel and intended to invoke her Fifth Amendment privilege against self-incrimination if called to testify. The court questioned Mrs. Sowell briefly, conducted an off-the-record discussion, and ruled that Mrs. Sowell could rely upon her privilege based upon the previous day's testimony. The record indicates that Mrs. Sowell faced a real and reasonable fear of incrimination on an extortion charge, and possibly other charges, based upon Ms. Williams's testimony. The privilege against self-incrimination must "be accorded liberal construction in favor of the right it was intended to secure." *Hoffman*, 341 U.S. at 486. Petitioner has not shown that the trial court erred in excusing Mrs. Sowell from testifying at trial based upon her claimed Fifth Amendment privilege. *See Davis v. Straub,* 430 F.3d 281, 287 (6th Cir. 2005) ("Because the Supreme Court has never held that permitting a witness to assert his or her Fifth Amendment privilege against self-incrimination without taking the witness stand violates a defendant's right to a fair trial, the trial court did not act contrary to clearly established federal law when it allowed [a witness] to invoke the privilege before

taking the witness stand.").  Although Petitioner claims that the court was required to conduct a more thorough inquiry, Petitioner's claim in this regard relies upon state law and it is well-settled that perceived errors of state law do not provide a basis for federal habeas relief.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Habeas relief is not warranted on such a basis.

To the extent that Petitioner asserts he was entitled to elicit Mrs. Sowell's testimony as a matter of the Compulsory Process Clause, his claim also fails.  The Supreme Court has explained that "more than mere absence of testimony is necessary to establish a violation of the right [to compulsory process]."  *Valenzuela-Bernal*, 458 U.S. at 866.  The Sixth Amendment does not provide a defendant the right to process for obtaining any witness, only "witnesses in his favor."  U.S. CONST. amend. VI.  "This language suggests that [a defendant] cannot establish a violation of his constitutional right to compulsory process merely by showing that [he was deprived of witnesses' testimony].  He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."  *Valenzuela-Bernal*, 458 U.S. at 867.  Here, Petitioner cannot establish that Mrs. Sowell's testimony would have been material and favorable because the facts he sought to elicit from her were elicited from Ms. Williams.  Additionally, other witnesses and Petitioner testified about Mrs. Sowell's affair with Petitioner.  Because Mrs. Sowell's testimony would have been cumulative to Ms. Williams's admissions and the testimony of other witnesses, the trial court's exclusion of Mrs. Sowell's testimony did not violate Petitioner's right to compulsory process.  *See Daniels v. Lee*, 316 F.3d 477, 489 (4th Cir. 2003); *United States v. Romero-Cruz*, 201 F.3d 374, 378 (5th Cir. 2000); *see also Valenzuela-Bernal*, 458 U.S. at 873 (emphasis added) (stating that the defendant must show that the

evidence "would have been material and favorable *in ways not merely cumulative to* the testimony of available witnesses.").

For the same reasons, Petitioner cannot prevail upon any claim that the trial court's decision to honor Mrs. Sowell's invocation of her Fifth Amendment privilege violated his right to present a defense. Petitioner was able to present his defense that Mrs. Sowell was a "woman scorned" who used Ms. Williams to punish him and to extort money from him through the examination of other witnesses and through his own testimony. Habeas relief is thus not warranted on such a claim.

### 3. Ineffective Assistance of Counsel

Finally, Petitioner asserts that defense counsel was ineffective for conceding that Petitioner lacked a remedy to counter Mrs. Sowell's assertion of her Fifth Amendment privilege. The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698.

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed

16

to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The Michigan Court of Appeals denied relief on this claim, stating:

> For the same reasons, we disagree with defendant's argument that he was deprived of effective assistance of counsel when his attorney withdrew a motion for a mistrial based on the unavailability of Sowell's testimony. *See People v. Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) (stating that attorneys are not required to advance meritless positions).

*Randolph*, 2004 WL 2533548 at *3.

The Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application thereof.  Given this court's determination that the foregoing claims lack merit, Petitioner cannot establish that defense counsel erred and/or that he was prejudiced by counsel's conduct in withdrawing the mistrial motion.  Petitioner is not entitled to relief on this claim.

### C.  Other Acts Evidence Claim

Petitioner also contends that he is entitled to habeas relief because the trial court erred in admitting prior bad acts evidence.  Respondent contends that this claim is not cognizable upon federal habeas review and lacks merit.

The Michigan Court of Appeals reviewed this claim as a matter of state law and concluded that the trial court did not abuse its discretion by admitting the evidence as evidence of a common design or plan under the Michigan Rules of Evidence.  *See Randolph*, 2004 WL 2533549 at *1-2.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). An evidentiary ruling may violate due process and warrant habeas relief only when it is "so egregious that it results in a denial of fundamental fairness." *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

The United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner has thus failed to state a claim upon which federal habeas relief may be granted as to this issue.

### D. Sentencing Claims

Lastly, Petitioner contends that he is entitled to habeas relief because the trial court improperly sentenced him. Petitioner claims that the trial court mis-scored an offense variable and his sentencing guidelines and improperly sentenced him as a

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

habitual offender pursuant to a defective notice.  Respondent contends that these sentencing claims are state law issues that do not warrant habeas relief.

### 1. Offense Variable and Guideline Scoring

Petitioner first asserts that the trial court erred in scoring Offense Variable 11 at 50 points rather than 25 points and that this resulted in an incorrect scoring of the state sentencing guidelines.  The Michigan Court of Appeals found that the trial court erred in scoring Offense Variable 11, but concluded that the error was harmless because Petitioner's minimum sentence fell within the habitual offender enhanced range.  *See Randolph*, 2004 WL 2533549 at *4.

Claims that arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceed the statutory limits or is wholly unauthorized by law.  *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner challenges the scoring of his sentencing guidelines under state law.  A claim that the state sentencing guidelines were incorrectly scored fails to state a claim upon which federal habeas relief can be granted.  *See, e.g., Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *see also Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Petitioner is not entitled to habeas relief on this state law sentencing issue.

### 2. Habitual Offender Notice

Petitioner also asserts that the trial court violated his rights by sentencing him as a habitual offender because the notice was not properly filed.  It appears from the

record that the notice contained the wrong first name, but correct last name and case number. The Michigan Court of Appeals denied relief on this claim finding that Petitioner's challenge to the habitual offender notice was waived by his no contest plea to habitual offender third. *See Randolph*, 2004 WL 2533549 at *4 n. 2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. First, Petitioner's claim that he received inadequate or untimely notice of the habitual offender charge under Michigan law fails to state a claim which is cognizable upon federal habeas review. *See Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240-41 (E.D. Mich. 1993). It is well-settled that habeas relief may not be based upon a perceived violation of state law. *See, e.g., Estelle*, 502 U.S. at 67-68.

Second, due process does not require advance notice that a trial on a substantive criminal charge will be followed by a habitual offender enhancement. Due process only requires that a defendant be given reasonable notice and an opportunity to be heard. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). Petitioner does not dispute that he had prior felony convictions that justified his habitual offender sentencing enhancement. Furthermore, Petitioner pleaded no contest to the third habitual offender charge. Petitioner has submitted no argument or authority to persuade this court that his plea does not bar habeas review on his claim of inadequate notice of the habitual offender charge. *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Tolbert*, 811 F. Supp. at 1241. The record reveals that Petitioner received sufficient notice of the habitual offender charge and that he had an opportunity to be heard on that issue. He has not shown that he was denied due process. Habeas relief is not warranted.

## E.  Certificates of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002).  In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . .  will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims.

## F.  Good Faith Basis for Appeal

For the reasons stated in this order, the court finds an appeal in this case would be frivolous and not taken in good faith.  28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th

Cir. 1997). Therefore, Plaintiff is not certified to pursue an appeal from this judgment *in forma pauperis.* 28 U.S.C. § 1915(a)(3). Nevertheless, should Plaintiff decide to file a notice of appeal, he may seek leave from the Court of Appeals to proceed on appeal *in forma pauperis. See* Fed. R. Civ. P. 24(a)(5).

### III. CONCLUSION

IT IS ORDERED that Petitioner's habeas corpus petition [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

IT IS FURTHER ORDERED that the court DECLINES to certify an *in forma pauperis* appeal.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 27, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 27, 2007, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522